JUSTICE RICE,
concurring in part and dissenting in part.
¶59 I agree with the Court’s analysis under the first issue regarding spousal privilege, but disagree with the conclusion reached under the second issue regarding the expert testimony that was admitted concerning Forsythe’s letters. It is vital to maintain the distinction between lay witnesses and expert witnesses[1] and to properly analyze the error when this distinction is lost.
¶60 At trial, the State repeatedly claimed Tucker was simply a lay witness. As the State acknowledges on appeal, this assertion was incorrect—Tucker indeed offered expert testimony. As we recently explained, “if testimony crosses from lay to expert testimony the witness must be recognized as an expert by the court or error occurs.” State v. Kaarma, 2017 MT 24, ¶ 86, 386 Mont. 243, 390 P.3d 609. Designating a witness as an expert bears significantly on trial preparation and failure to do so can be prejudicial to the other side. See Superior Enters. LLC v. Mont. Power Co., 2002 MT 139, ¶¶ 18-20, 310 Mont. 198, 49 P.3d 565. In the criminal context, any error must be analyzed under the Van Kirk test. State v. Van Kirk, 2001 MT 184, 306 Mont. 215, 32 P.3d 735. While the Court acknowledges that Tucker’s testimony constituted an authentication error under M. R. Evid. 901(b)(2), and proffers a Van Kirk analysis, the Court’s analysis is legally incorrect and factually inconsistent with the record. I believe the Court has significantly watered down the Van Kirk standards and has failed to “insure that the substantial rights of the defendant are not prejudiced by the admission of tainted evidence.” Van Kirk, ¶ 50.
¶61 As an initial matter, the fact should not be lost that the State tried this case with expert testimony, which was noticed, at best, some 12 days before trial was to begin. Although he correctly objected to the expert aspects of Tucker’s testimony, Forsythe was left without time *78 to obtain expert testimony to rebut it. This resulted in further prejudice to Forsythe.
¶62 The Court takes the most unusual step of conducting its own handwriting analysis of the letters, and concludes therefrom that, “[tjhough somewhat altered in some of the letters, the writing styles still remained substantially similar in most regards.” Opinion, ¶ 46. It should go without saying that an appellate court has no expertise in handwriting analysis; but beyond that, the problem the Court fails to acknowledge is that the only explanation about these “writing styles” provided during the trial was Tucker’s inadmissible testimony. Without that, the jury would have been left to their own devices in analyzing the letters, which, as evidenced by these two samples, were written in different styles.[2]

¶63 Some of the letters forming the basis of the tampering charge *79 stated that they were from persons other than Forsythe, and the altered writing style was apparently employed to further Forsythe’s alleged subterfuge. Thus, under the State’s theory of the case, it was necessary to establish that the letters were written exclusively by Forsythe. I think it is possible that a rational jury, looking only at the letters, without guiding expert testimony, could have had doubt about whether the letters were written by the same person. In order to establish they were all written by Forsythe, the State offered Tucker, who offered expert testimony to assist the jury, as follows:
[State’s counsel:] Q. And did you use accepted procedures to analyze these letters?
[Tucker:] A. Yes, I did.
Q. Now, since then have you had the opportunity to compare those exhibits [(the letters allegedly written by Forsythe and sent to his wife)] to other writings [(the letters allegedly written and signed by Forsythe and sent to the District Court)]?
A. Yes, I have.
Q. What’s unique about these letters?
A. For example, the letter E, regardless of where the letter was in a word or in a sentence, it was always the same letter form. Particularly, there are some, what we call, hiatuses in writing, particularly with the capital letter M, on the upper left-hand corner of the M, there’s a hiatus, which is basically a lift in the pen, the writing, so that the writing doesn’t connect in that spot, and that’s consistent throughout all of the writing that I looked at. Also, the slope and slant of the t-bar and the I is very—very distinct in all of this writing.
Q. And you’ve reached an opinion [about the letters]?
A. Yes, the opinion that I’ve reached between both sets [of letters] ... the writing that I was given that was written to the Judge and the writing I was given that was allegedly written to ... [Forsythe’s wife], I consider them not verifiable as far as to who the author actually is, so I consider them questioned documents. But I did compare them together, and my professional opinion is that they were written by the same author, both sets of letters.
(Emphasis added.)
¶64 Tucker provided substantive, technical testimony. He applied “accepted procedures,” analyzed the letters, and offered a professional *80 opinion that “they were written by the same author, both sets of letters.” The State did not present any other evidence proving this point.
¶65 The Court deals with the problem of Tucker’s inadmissible testimony, first, by minimizing it as “merely foundational evidence.” Opinion, ¶ 42. It was much more than that. As the Court here affirms, the letters were properly admitted during the trial on the basis of Giana’s testimony that she had received them. See Opinion, ¶ 31 (“[T]he District Court did not abuse its broad discretion by admitting the letters into evidence as they were not privileged.”). Tucker’s testimony was not necessary to lay additional foundation for admission of the letters. Rather, as evident from the quoted testimony above, the State used Tucker to accomplish a qualitatively different purpose—to establish, by scientific analysis and opinion, that all eight letters at issue had been written by the same person, which was necessary to establish the tampering charge. The Court’s dismissive characterization of Tucker’s testimony as “merely cumulative to other evidence provingthe foundational authenticity” of the letters, Opinion, ¶ 45, fails to comprehend the significance of the testimony and the State’s purposes.
¶66 Secondly, the Court minimizes the effect of Tucker’s testimony by manufacturing its own, non-record evidence. It relies, repeatedly, on the asserted facts that Giana “was familiar” with Forsythe’s handwriting and that she “did not acquire that familiarity for purposes of litigation.” Opinion, ¶¶ 43-47. However, there is absolutely no evidence of these things in the record. About the letters, Giana testified only that she had received them. The sum total of her testimony was as follows:
[State’s counsel:] Q. Now, Gianna, at some point, you received letters—
[Gianna:] A. Yes.
Q. —from your husband?
A. Yes.
Q. How many did you receive?
A. I think five. I think four, five.
Q. Did you eventually turn those letters over to law enforcement?
A. Yes.
The absence of any evidence in the record forces the Court to turn these non-record assumptions into evidence on the basis that “Forsythe does not dispute” them. Opinion, ¶¶ 43, 47. It need only be asked: How was Forsythe supposed to dispute evidence that was never introduced? Forsythe likewise did not dispute a great many other things that were *81 not introduced, but that does not magically turn these things into record evidence.
¶67 Another problem the Court fails to see is the impact on the trial of the tainted testimony in combination with the admitted letters. The jury’s assessment of the letters was polluted by the improper expert testimony that affirmatively concluded all of the letters were written by the same person. The jury was not allowed to draw a conclusion about the letters themselves. While the Court offers that a lay jury may determine foundational authenticity by comparison to other specimens, Opinion, ¶ 44, it fails to recognize that this province of the jury was invaded here by Tucker’s improper expert testimony.
¶68 As we recently explained in Kaarma about the same error:
Inadmissible evidence will not be found prejudicial so long as the jury was presented with “admissible evidence that proved the same facts as the tainted evidence proved.” Van Kirk, ¶ 43. This presented evidence must be admissible and of the same quality of the tainted evidence such that there was no reasonable possibility that it might have contributed to the defendant’s conviction. Van Kirk, ¶ 44.
Kaarma, ¶ 89 (emphasis added). Here, as noted, no other evidence proving the same facts as the tainted evidence was introduced by the State. While the Court reasons that the tainted evidence was not significant enough to “undermine the fairness” of the trial because it was “merely” foundational evidence, Opinion, ¶ 42, the above discussion demonstrates otherwise. This evidence went directly to the elements of tampering—Tucker’s testimony alone uniquely demonstrated scientifically that all the letters had been written by Forsythe. Thus, the State cannot meet its burden.
¶69 “Moreover, the State must also demonstrate that the quality of the tainted evidence was such that there was no reasonable possibility that it might have contributed to the defendant’s conviction.” Van Kirk, ¶ 44 (emphasis in original). In my view, Tucker’s expert testimony was of a significant quality, as it affirmatively declared on the basis of technical knowledge that a single author had written all of the letters, despite the facial differences in handwriting. No other evidence did so, and Tucker’s expert testimony was powerful evidence to a lay jury. Thus, the State cannot establish that the error was harmless under this inquiry, either. Consequently, reversal here is “compelled.” Van Kirk, ¶ 45. The State—and the Court, I would add—have failed to demonstrate “no reasonable possibility exists that the admission of the tainted evidence might have contributed to the *82 defendant’s conviction.” Van Kirk, ¶ 46. The Court’s approach subverts the Van Kirk inquiry and returns to the subjective, ad hoc analysis of the record we sought to abandon by adopting the Van Kirk standards. Van Kirk, ¶¶ 35-36.
¶70 Believing the expert testimony from Tucker was prejudicial under these circumstances, I would reverse and remand for a new trial.
JUSTICE BAKER joins in the concurring and dissenting Opinion of JUSTICE RICE.

 Chief Justice Gray highlighted this point when she dissented in State v. Henderson, 2005 MT 333, 330 Mont. 34, 125 P.3d 1132, stating, “In my opinion, our cases on the issue of whether ‘official’ personnel may testify as lay witnesses based on their training and experience are in disarray and require clarification for the purpose of guiding trial judges and attorneys in future civil and criminal cases on this increasingly confused subject.” Henderson, ¶ 27 (Gray, C.J., dissenting). Chief Justice Gray’s words have proved prophetic. See generally Henderson, ¶¶ 28-32 (Gray, C.J., dissenting) (summary of case law demonstrating the development of two separate lines of cases regarding testimony of “official personnel”).

 Sample 1 is an excerpt from State’s Exhibit 2E and Sample 2 is an excerpt from State’s Exhibit 2C.